UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YOLANDA DENSON, on behalf of § | | |
| F.B., a minor § | | |
|     *Plaintiff,* § | | |
| § | | |
| *v.* § | | CIVIL ACTION H-09-0110 |
| § | | |
| MICHAEL J. ASTRUE, § | | |
|   Commissioner of Social Security § | | |
|     *Defendant.* § | | |

## OPINION ON SUMMARY JUDGMENT

This social security case is before the court on plaintiff Yolanda Denson's motion for summary judgment. (Dkt. 14.) For the following reasons, the court denies Denson's motion and affirms the Commissioners decision.

### Background

On October 4, 2007, F.B.'s mother, Yolanda Denson, filed an application for Supplemental Security Income benefits(SSI) on behalf of her son F.B., alleging that he is disabled due to attention deficit hyperactivity disorder (ADHD), anxiety, and learning disabilities. The Social Security Administration denied Denson's application initially on November 19, 2007, and upon reconsideration on February 12, 2008. Thereafter she requested and was granted a hearing before an ALJ.

On August 8, 2008, the ALJ issued a decision denying Denson's application. Denson then appealed to the Appeals Council. The Council denied review,

1

making the ALJ's decision the final decision of the Commissioner of Social Security in Denson's case. This appeal followed.

## Analysis

**1.      Standard of Review**

Federal courts review final decisions of the Social Security Commissioner under the "substantial evidence" standard. Under this deferential standard, the court reviews the Commissioner's decision to determine only if (1) the Commissioner applied the correct legal rules and (2) the Commissioner's decision was supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). It must be "more than a mere scintilla" but can be "less than a preponderance." *See Masterson*, 309 F.3d at 272. Consequently, the substantial evidence standard sometimes requires a federal court to uphold the Commissioner's decision even when it believes that most of the evidence weighs against it. *See id.*

2. **Childhood Disability Evaluation**

SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, are available to aged, blind and disabled individuals, including minors who are disabled. *See* 42 U.S.C §§ 1382, 1382c. Under the Act, a child under the age of 18 is considered to be "disabled" if he has a medically determinable impairment "which results in marked and severe functional limitations," and which can be expected to last for a period of not less than 12 months. 42 U.S.C §1382c(a)(3)(C).

In determining whether a child is disabled and eligible for SSI benefits under the meaning of the Social Security Act, a three-step evaluation is employed by the ALJ.

First, the ALJ must determine whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). If the child is not, then the ALJ determines if the child's impairment or combination of impairments is severe. 20 C.F.R. § 416.924(c). The child will not be found to have a severe impairment if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* If there is a finding of a severe impairment, the ALJ must determine whether the impairment or impairments meets, equals, or is functionally equal in severity to a listed impairment. 20 C.F.R. § 416.924(d). For this inquiry, the ALJ must consider whether the applicant's impairment results in a marked limitation in two domains

3

or an extreme limitation in one domain for the following: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A marked limitation is present where the impairment interferes seriously with one's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I)). An extreme limitation is present where one's impairment "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

3. The Commissioner's Decision and the Evidence of Record

F.B. was a school-aged child at the time he applied for SSI; he was in the second grade at the time of his hearing before the ALJ. At step 1 of the 3-step process that applies to child-disability determinations, the ALJ determined that F.B. had not engaged in substantial gainful activity. At step 2, the ALJ determined that Rudy had one medically determinable severe impairment of attention deficit and hyperactivity disorder. At step 3, the ALJ determined that F.B.'s impairment does not meet or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ explained that no treating or examining physician indicated findings that would satisfy the severity of any listed impairment.

The ALJ then determined that F.B.'s impairments do not functionally equal

a listed impairment because F.B. does not have marked limitations in two of the six domains used to assess functional equivalence, or an extreme limitation in one domain. The ALJ further found that F.B. has no impairment that interferes seriously with his ability to independently initiate, sustain, or complete activities. SSA record, pp. 21. Thus, the ALJ concluded that F.B. is not disabled as defined under the Social Security Act. SSA record, pp. 21.

Denson argues that the ALJ erred in the following ways: (1) failing to properly inform Denson of her right to counsel at the hearing; (2) failing to consider F.B.'s anxiety and (3) failing to properly evaluate F.B'.s limitations in the domains of attending and completing tasks and health and well being.

A.  **Denson's Right to Counsel**

A Social Security claimant has a statutory right to counsel at a hearing before an ALJ, but is not required to have counsel. 42 U.S.C. § 406. There is an obligation on the part of the Commissioner to notify the claimant of his or her right to be represented at the hearing before the administrative law judge. *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981); *Herridge v. Richardson*, 464 F.2d 198 (5th Cir. 1972). Any waiver of the right to counsel "must be clearly expressed or strongly implied from the circumstances." *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110, 1113 (5th Cir. 1991).

An ALJ has a special duty to develop a full and fair record where an unrepresented claimant appears before him. *Clark*, 652 F.2d at 403. While a claimant need not prove that the presence of counsel would necessarily have resulted in any specific benefits, the claimant must show that he was prejudiced in some way by lack of counsel. *McConnell v. Schweiker*, 655 F.2d 604, 606 (5th Cir. 1981); *Clark*, 652 F.2d at 406.

The Commissioner contends that adequate notice of the right to counsel was given to Denson before the hearing and that Denson knowingly elected to proceed without counsel at the hearing. The transcript shows that Denson was given multiple written notifications of her right to counsel: (1) on November 19, 2007, in the notice of her first disapproved claim; (2) on February 21, 2008, in the notice of her disapproved reconsideration; (3) on March 31, 2008, in her request for a hearing; (4) on July 3, 2008, immediately following her request for a hearing; and (5) finally on August 26, 2008, twenty days after the hearing. SSA record pp. 23, 30, 39, 41.

While Denson concedes that she received these written notices, she complains that the ALJ did not at the hearing repeat that advice and confirm whether she understood her right to counsel and wished to waive it. Denson

6

contends that the ALJ's failure to mention the right to counsel constitutes a violation of the statutory duty to fully and fairly advise her of that right.

In support, Denson relies on *Clark* and two cases in the Eastern District of Texas. *See Clark,* 652 F.2d at 403 (waiver of counsel invalid when an ALJ gave oral and written notice but failed to fully discuss the possibility of contingency arrangements or free counsel)*; Earp v. Commissioner*, 168 F. Supp 2d 628, 634 (E.D. Tex. 2001) (waiver of counsel not effective even though claimant received written and oral notification on the record because claimant was illiterate ); *Gullet v. Charter*, 973 F. Supp 614 (E.D. Tex. 1997) (even a claimant who states unequivocally that she waives right to counsel must still have received adequate notice of the scope of that right).

The Eastern District decisions, though not controlling, are useful as persuasive authority because they are well-reasoned and on point. *Earp* and *Gullet* establish a three-step process for providing adequate notice. First, notice should generally be provided in writing prior to a hearing. *Earp,* 168 F. Supp 2d *at 634; Gullet*, 973 F. Supp at 621. Second, the ALJ should provide oral notification at the hearing to "ensure that a claimant who appears *pro se* at a hearing has been made aware of the options for obtaining counsel so that his or her waiver is knowingly and intelligently effected." *Id.* Finally, the ALJ should inquire as to whether the

7

claimant had a meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity. *Id.*

Although the question is close, the court is convinced that no valid waiver occurred here. The ALJ provided Denson with written notice of her right to counsel that advised her of sources for obtaining counsel, and advised her of the possibility of contingency arrangements on several different occasions prior to the hearing. However, the ALJ failed to provide any oral notification whatsoever, nor did he take steps at the hearing to ascertain that Denson was actually aware of her options for obtaining counsel, or that her waiver was voluntarily, knowingly and intelligently effected. Denson never expressly waived her right to counsel, and was not asked to do so at the hearing. The only arguable basis for a finding of waiver here is an implicit one—her appearance at the hearing without counsel, after receiving written notice. But a knowing and voluntary waiver of such an important right is not properly based on an inference from silent conduct. Therefore, the court concludes that Denson did not effectively waive her right to counsel under these circumstances.

Invalid waiver alone, however, is not enough to warrant relief. Plaintiff must show prejudice to merit remand. *Brock*, 84 F.3d at 729 n.1 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). To establish prejudice, plaintiff must show that counsel "could and would have adduced evidence that might have altered the

result." *Id.* at 728. Absent proof of prejudice resulting from invalid waiver, the court may still affirm the ALJ's decision. Denson's vague assertion in a footnote that "new evidence of F.B.'s disability exists and will be used at a new hearing in the event of a remand" is not enough to carry her burden in showing what prejudice she experienced due to this failure. Denson does not specify what the new evidence is, or how its omission prejudiced her case. Accordingly, we cannot find that Denson was prejudiced by lack of counsel.

2.  **Anxiety**

Denson argues that the ALJ erred in ignoring F.B's anxiety when evaluating his disability. F.B. was diagnosed by a treating physician with generalized anxiety in 2007. He has since taken the prescription medication Lexapro to treat this condition. Denson argues that although the record is replete with references to F.B.'s anxiety and his reliance on Lexapro, the ALJ failed to consider this in evaluating F.B.'s disability.

The ALJ found that F.B. had a severe impairment of ADHD, but did not expressly find that F.B. had a severe impairment of anxiety. The ALJ's determination of F.B.'s impairments did however include a review of F.B.'s anxiety treatment. The ALJ observed that Veronica Funke, F.B.'s therapist, worked with F.B. on implementing effective coping strategies to reduce overall feelings of anxiety and achieve positive behavior modification. Substantial evidence supports

9

a finding that F.B.'s anxiety was not severe. The record showed that F.B.'s anxiety was effectively controlled with medication and therapy. Conditions that are controlled by medication or treatment are not disabling. *See Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). The ALJ did not err by not finding that F.B.'s anxiety was severe.

3.     **Listing Impairment Evaluation**

In her final issue, Denson argues that ALJ failed to properly evaluate F.B.'s domains of functionality in the areas of "attending and completing tasks" and "health and well-being."

A.     **Attending and Completing Tasks**

To determine whether a child functionally equals a listed impairment, the ALJ considers all six functional domains. The ALJ found that F.B. had less than marked limitations in the domain of attending and completing tasks and in his health and well being. Under the domain of "attending and completing tasks," the SSA considers how well a child is able to focus and maintain attention and how well a child begins, carries through, and finishes activities, including the pace at which the child performs such activities. *See* 20 C.F.R. § 416.926a(h).

The record contradicts Denson's contention that F.B. has marked or extreme limitations in "attending or completing tasks." Although F.B. is enrolled in some

special education classes and was required to repeat the first grade, Denson indicated that F.B. was able to keep busy on his own, finish things he starts, work on arts and crafts projects, and complete his chores most of the time. F.B.'s teacher noted that he participated in class activities and that his ability to exhibit organization in accomplishing tasks and complete tasks is average. Additionally, aside from special education classes in speech-language and occupational therapy, F.B. is enrolled in all general education classes. Denson cites no other evidence to support her contention that F.B. has a severe or marked limitation in attending or completing tasks. Accordingly, it was appropriate for the ALJ to find that F.B. did not have marked limitations in this domain.

### B.     Health and Physical Well-Being

Assessment in this domain includes the cumulative effects of any physical and mental impairments, and any associated treatment or therapies on the child's functioning. *See* 20 C.F.R. § 416.926a(1).

Social Security regulation 20 CFR 416.926 a(I)(3) sets forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. These examples include: (1) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of

11

energy or stamina), or psychomotor retardation because of any impairment(s); (2) somatic complaints related to an impairment (e.g.; seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (3) limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (4) exacerbations from an impairment(s) that interfere with physical functioning; or (5) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

The record supports the ALJ's finding that F.B. has less than marked limitation in health and physical well-being. Denson argues that the ALJ ignored F.B.'s psychotropic medications for his ADHD and anxiety. But F.B.'s medical examiners do not indicate that he has any side effects from his prescribed medication, other than a single episode of fatigue. There is no documentation of significant subjective complaints requiring frequent physician intervention or hospitalizations; in fact, the ALJ noted that F.B.'s ADHD and anxiety are improving through his therapy sessions. F.B.'s therapist noted that F.B. has become less defiant and exhibited increased self confidence. In short, substantial evidence supports the ALJ's conclusion that F.B. does not have an impairment or

combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

## CONCLUSION

The court concludes that the ALJ applied proper legal standards and its August 8, 2008 decision is supported by substantial evidence. Therefore, the court recommends that Denson's motion for summary judgment be denied.

Signed at Houston, Texas on November 10, 2009.

Stephen Wm Smith
United States Magistrate Judge